IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| LEIF HENRY, | : | CIVIL ACTION |
| --- | --- | --- |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 12-1380 |
| | : | |
| CITY OF ALLENTOWN, et al., | : | |
| Defendants. | : | |

**M E M O R A N D U M**

**STENGEL, J.** January 7, 2013

Officer Leif Henry filed this employment discrimination action against the City of Allentown and Chief of Police Roger MacLean (collectively, Defendants). Henry alleges violations of 42 U.S.C. § 1981, the Rehabilitation Act (RA), 29 U.S.C. § 701 *et seq.*, and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* He also asserts a procedural due process claim pursuant to 42 U.S.C. § 1983. Defendants moved to dismiss Counts I, II, and IV in their entirety and Count III as to Defendant MacLean. For the following reasons, I will grant the motion.

**I.  BACKGROUND**

Henry, a Hispanic officer in the Allentown City Police Department's K-9 unit, was "reassigned to a lesser position after the death of his dog," purportedly because he mishandled the donation of a replacement canine. Am. Compl. ¶ 4. He was "replaced by an officer who did not have the same credentials." Id. ¶ 13.

Henry also suffers from "severe migraine headaches," which prompted his physician to request that Henry "not be required to work night shift." Id. ¶ 5. Defendants

refused the request.  Id. ¶ 6.  Additionally, Defendant MacLean sent text messages to a friend in which MacLean "ridiculed Plaintiff's accommodation requests and indicated that he harbored an animus against ADA qualifying officers."  Id. ¶ 9.

Henry alleges that "white officers are being treated preferentially."  Id. ¶ 7.  He claims he was "made to do menial and demeaning tasks . . . due to Hispanic origin," such as retrieving his supervisor's lost pen.  Id. ¶ 8.  He also claims he was "[o]n many occasions . . . called upon to 'translate' for the Department[] in its dealings with Hispanic members of the community."  Id. ¶ 12.

## II.    STANDARD OF REVIEW[1]

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The factual allegations must be sufficient to make the claim for relief more than just speculative.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "[C]onclusory or 'bare-bones' allegations will no[t] . . . survive a motion to dismiss."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

---

[1] Along with his response, Henry filed in opposition to Defendants' motion an affidavit bolstering the factual allegations contained in his amended complaint.  As a "matter outside the pleading," I will not consider Henry's affidavit in ruling on Defendants' motion.  Rule 12(d); see also Rose v. Bartle, 871 F.2d 331, 339 n.3 (3d Cir. 1989) (affidavit filed in opposition to motion to dismiss "clearly comprised a matter outside the pleading").

## III. DISCUSSION

### A. Section 1981 (Count I)

Absent direct evidence, courts analyze disparate treatment claims under § 1981 pursuant to the McDonnell Douglas burden-shifting scheme. Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999). Accordingly, the burden of production first rests with Henry to establish a prima facie case of discrimination. To do so in the reassignment context, Henry must show (1) he is a member of a protected class, (2) he satisfactorily performed the duties required by his position, (3) he suffered an adverse employment action, and (4) either similarly-situated non-members of the protected class were treated more favorably or the adverse job action occurred under circumstances that give rise to an inference of discrimination. Langley v. Merck & Co., Inc., 186 F. App'x 258, 259 (3d Cir. 2006). Defendants contest only the fourth prong. I agree that Henry's § 1981 claim falls short.

Henry's allegation that "Caucasian employees with similar work records were not subjected to reassignment under similar circumstances," Am. Compl. ¶ 14, simply lacks underlying factual matter sufficient to state a plausible claim. See, e.g., Wise v. Estes, CIV.A. 10-481 (JLL), 2010 WL 2757273, at *4 (D.N.J. July 6, 2010) (finding plaintiff's "broad conclusory statements that he [was] more harshly reprimanded than non-minorities" insufficient to state plausible § 1981 claim). That Henry was asked to retrieve his supervisor's lost pen and translate conversations with Hispanic community members is not revealing of discriminatory animus, see, e.g., Vazquez v. Navistar Int'l Transp., 2:09-CV-434 JD, 2012 WL 1095223, at *6 (N.D. Ind. Mar. 30, 2012) ("Asking

3

[a] bilingual person . . . to translate a conversation is not evidence of discriminatory intent."), and in any event, these allegations are wholly unconnected to Henry's reassignment and thus are not "circumstances that raise an inference of discriminatory action," Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003). That leaves Henry's claim that he was "replaced by an officer who did not have the same credentials as [he] possessed." Am. Compl. ¶ 13. He does not allege the replacement officer was non-Hispanic. While Henry need not show he was replaced by someone outside his class in order to make out a prima facie case, Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 355 (3d Cir. 1999), he ultimately "must establish some causal nexus between his membership in a protected class and the decision to [reassign] him," Sarullo, 352 F.3d at 798. Because Henry has not done this, his § 1981 claim fails.

Count I is therefore dismissed, without prejudice. Consistent with this memorandum and its accompanying order, Henry may file a second amended complaint stating plausible § 1981 discrimination claims against Defendants City of Allentown and MacLean.[2] Phillips v. County of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008) (holding that district court must grant leave to amend factually deficient complaint, even where leave is not sought by plaintiff, unless amendment would be inequitable or futile).

---

[2] If Henry chooses to file a second amended complaint, he must allege facts indicating Defendant MacLean's personal involvement in his reassignment. See Johnson v. Res. for Human Dev., Inc., 843 F. Supp. 974, 978 (E.D. Pa. 1994) ("[A] claim seeking to impose personal liability under Section 1981 must be predicated on the actor's personal involvement and there must therefore be some affirmative link to causally connect the actor with the discriminatory action.").

4

### B. Section 1983 (Count II)

To state a § 1983 procedural due process claim, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006) (citing Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)). Henry contends that Defendants deprived him of a "property interest in his job . . . by reassigning him in his employment," Am. Compl. ¶¶ 20, 26, and that he "was not given any type of due process," id. ¶ 22. For the following reasons, I disagree with both contentions.

State law determines whether a public employee holds a property interest in his job. Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005). Allentown is a third-class city, subject to the Third Class City Code (Code), 53 P.S. § 35101 *et seq*. Under the Code, "no member of the city police force . . . shall be demoted in rank or discharged from the police force except upon proper cause shown as set forth under the civil service provisions of this act." 53 P.S. § 37001. Henry does not claim he was discharged or demoted in rank; he merely claims he "reassigned to a lesser position." Am. Compl. ¶ 4. Thus, at most, he has alleged a constructive demotion.

Interpreting similar language in the Police Tenure Act, 53 P.S. § 811 *et seq*., the Third Circuit in Clark v. Twp. of Falls, 890 F.2d 611 (3d Cir. 1989), held that absent an actual demotion in rank, courts "must look to other traditional indicia of change in rank to

5

determine whether the employee's rank constructively has been reduced." Id. at 618.[3] Those indicia include a "change in pay[,] . . . the imposition of duties normally given to employees of a lower rank, substantially reduced responsibilities, termination of privileges of rank, and whether the changes or restrictions are temporary." Id. Finding that the plaintiff officer was not constructively demoted, the Clark court noted that although the officer "clearly did not like the changes in his duties" and had experienced "genuine distress," he had retained not only his rank but also his salary and, despite losing many of his duties, "was not left without any job functions." Id.

Henry, like the plaintiff officer in Clark, was not constructively demoted. He does not allege that his pay was reduced or that he was deprived of all real job responsibilities. That Henry was displeased with his reassignment from the K-9 division is insufficient to establish a constructive demotion. For these reasons, Henry was not deprived of a property interest in his employment, and his procedural due process claim fails.

Even if Henry had been deprived of a property interest in his employment, he received due process. "[W]here an adequate grievance/arbitration procedure is in place and is followed, a plaintiff has received the due process to which he is entitled under the Fourteenth Amendment." Dykes v. Se. Pennsylvania Transp. Auth., 68 F.3d 1564, 1565 (3d Cir. 1995); see also Jackson v. Temple University, 721 F.2d 931, 933 (3d Cir. 1983).

---

[3] The provision at issue in Clark read:

> No person employed as a regular full time police officer in any police department of any township of the second class . . . shall be suspended, removed or *reduced in rank* except for the following reasons: [physical or mental disability; violation of any official duty; commission of a crime; inefficiency, neglect, intemperance, disobedience of orders, or conduct unbecoming an officer; intoxication while on duty.]

53 P.S. § 812 (emphasis added).

"If a public employee believes that the grievance process was defective, he may seek relief available under state law." Dykes, 68 F.3d at 1571.

A recent case in this district is illustrative. In McGinley v. City of Allentown, the plaintiff, a terminated public employee, alleged that his "union['s] refus[al] to file a grievance on [his] behalf" denied him due process. No. 12-645, slip op. at 14 (E.D. Pa. June 18, 2012). The court dismissed the claim, holding that "[p]laintiff can pursue no cause of action against [his] own employer for a violation of procedural due process for the failure of [his] union to file a grievance, and the proper course of action is to pursue a cause of action under state law against the union." Id. (citing Dykes, 68 F.3d at 1571-72; Jackson, 721 F.2d at 933).

Here, the collective bargaining agreement between the City of Allentown and Henry's union sets forth grievance procedures. Henry has not alleged those procedures were inadequate or interfered with by Defendants; rather, he contends his "union took no realistic steps to assist him when he was reassigned." Am. Compl. ¶ 23. As in McGinley, Henry's cause of action therefore lies against his union, not against Defendants.[4]

Count II is therefore dismissed, without prejudice. Consistent with this memorandum and its accompanying order, Henry may file a second amended complaint

---

[4] Henry's attempt to distinguish McGinley is unavailing. He cites to various provisions of the Police Tenure Act and the Borough Code, 53 P.S. § 46171 *et seq.*, which he claims, as a police officer, provide him with protections not implicated in McGinley. Doc. No. 9 at 14. These provisions are not applicable to the City of Allentown. Even if they were, they go solely to whether Henry was deprived of a property interest in his job. As indicated, his procedural due process would fail even if he had been so deprived.

stating plausible § 1983 procedural due process claims against Defendants City of Allentown and MacLean.[5]

### C. RA (Count III)

Littered with buzzwords but lacking in clarity, Count III of Henry's amended complaint borders on incoherent. He appears to assert failure-to-accommodate and discrimination claims under the RA. The parties' briefings shed no light on the matter. Defendants argue that MacLean cannot be individually liable under the RA, which Henry concedes in his response, but that is the extent of the discussion. In any event, it does not appear from Defendants' proposed order that they are seeking dismissal of Henry's RA claims against the City of Allentown.

Henry's RA claims against Defendant MacLean are therefore dismissed, with prejudice.

### D. ADA (Count IV)

Finally, Henry asserts a retaliation claim under the ADA. To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997). Defendants contest the second and third prongs.

---

[5] Again, if Henry chooses to file a second amended complaint, he must allege facts indicating Defendant MacLean's personal involvement in the purported § 1983 due process violation. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

Although not readily apparent from Henry's amended complaint, it appears from his response that Defendant MacLean's text messages are the allegedly adverse actions here. Doc. No. 5-2 at 18. Henry claims Defendant MacLean sent text messages to a third party in which "he ridiculed the Plaintiff's accommodation requests and indicated that he harbored an animus against ADA qualifying officers." Am. Compl. ¶ 9. Defendants argue that MacLean's actions were not materially adverse. I agree.

"The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). Accordingly, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse." Id. An employment action is materially adverse where "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. (citations and internal quotation marks omitted).

Henry has not plausibly alleged that Defendant MacLean's third-party text messages were materially adverse. He identifies no injury or harm resulting from the messages. While it is true that the "standard for judging harm [is an] objective" one, id., there must actually be an injury or harm before an employer's action may be deemed materially adverse. Morrison v. Carpenter Tech. Corp., 193 F. App'x 148, 154 (3d Cir. 2006) (affirming grant of summary judgment on plaintiff's retaliation claim where plaintiff did "not identify, much less establish, any harm or injury produced by the" allegedly adverse action). Henry's ADA retaliation claim therefore fails.

I note, however, that even if Defendant MacLean's text messages were materially adverse, Henry has failed to plausibly allege a causal link sufficient to satisfy the third prong of the prima facie case. Two factors are relevant in determining whether a causal link exists between a plaintiff's protected activity (in this case, Henry's request for an accommodation) and the adverse employment action: timing and evidence of ongoing antagonism. Abramson v. William Paterson Coll. of New Jersey, 260 F.3d 265, 288 (3d Cir. 2001). Here, the amended complaint provides no basis for concluding that Defendant MacLean's text messages were sent soon enough after Henry's accommodation request to be "unusually suggestive of retaliatory motive." Williams v. Philadelphia Hous. Auth. Police Dept., 380 F.3d 751, 760 (3d Cir. 2004) (citations and internal quotation marks omitted). Indeed, Henry provides no dates or timeframe for any of the events in his amended complaint. Nor are there any facts to suggest a pattern of antagonism between Henry's request for an accommodation and Defendant MacLean's text messages.

Count IV is therefore dismissed, without prejudice to Henry's right to file a second amended complaint stating a plausible ADA retaliation claim against Defendant City of Allentown.[6]

## IV. CONCLUSION

For the foregoing reasons, Counts I and II are dismissed without prejudice to Henry's right to file a second amended complaint stating plausible § 1981 discrimination

---

[6] Because "there is no individual liability under Title I or Title V [of the ADA] for discrimination claims arising out of an employment relationship," Henry's retaliation claim against Defendant MacLean is dismissed with prejudice. Shine v. TD Bank Fin. Group, CIV 09-4377, 2010 WL 2771773, at *7 (D.N.J. July 12, 2010).

10

and § 1983 procedural due process claims against Defendants City of Allentown and Maclean; Count III is dismissed with prejudice as to Defendant MacLean; and Count IV is dismissed with prejudice as to Defendant MacLean but without prejudice to Henry's right to file a second amended complaint stating a plausible ADA retaliation claim against Defendant City of Allentown.