IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEIF HENRY,<br><br>              Plaintiff,<br><br>     v.<br><br>CITY OF ALLENTOWN and CHIEF ROGER MACLEAN,<br><br>              Defendants. | CIVIL ACTION<br>NO. 12-1380 |

### MEMORANDUM

**SCHMEHL, J.**                                                                              September 17, 2014

Following an initial amendment on his own and then rulings on two prior motions to dismiss, Plaintiff Leif Henry filed a third amended complaint related to his employment as a police officer with Defendant City of Allentown. The latest version contains two counts: one for race discrimination and one for violation of the Rehabilitation Act (RA), 29 U.S.C. §701 *et seq*. Despite repeated amendment, Plaintiff still fails to state a sufficient, plausible version of either claim, and the Court will now dismiss the case in its entirety with prejudice.

Count I – Race Discrimination

The Court's prior ruling on Plaintiff's race discrimination claim under §1981[1] first reiterated Judge Stengel's earlier holding that Plaintiff's allegations of being assigned demeaning tasks or Spanish translation duties are legally irrelevant, which

---

[1] Plaintiff has added a reference to §1983 in his heading for Count I. The Court's December 9, 2013, order denied Plaintiff's motion to file an amended complaint that would have included a reference to §1983. The order nevertheless gave leave to amend, but only in accordance with the ruling on the motion to dismiss, which did not contemplate such a claim. The Court will not now consider any §1983 claim.

remains true despite Plaintiff's continued assertion of those issues. The Court then addressed Plaintiff's attempt to base an inference of discrimination on a comparator analysis, finding the allegations insufficient to recognize the other employees as comparable with regard to their supervisors, disciplinary records, infractions, or punishments.

In Plaintiff's view, his third amended complaint improves those comparator allegations, but he first argues he does not actually have to offer comparator allegations. His argument exhibits the common difference of opinion between plaintiffs and defendants with regard to the effect of the *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) opinions. His citation to *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008), is weak because that case predates *Iqbal* and did not involve a discrimination claim. Plaintiffs must plead facts to show a plausible claim for relief. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "This 'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Circumstances giving rise to an inference of discrimination remain an element of a prima facie case of discrimination; failure to allege facts showing that element, such as different treatment of similarly situated comparators, may still result in dismissal. *See Kiniropoulos v. Northampton Cnty. Child Welfare Serv.*, 917 F. Supp. 2d 377, 388-90 (E.D. Pa. 2013). Here, this Court's experience and common sense lead it to recognize that in the context of this case—context including the fact that Plaintiff has repeatedly offered tenuous and irrelevant indications of discrimination such as being asked to serve as an interpreter, as well as the fact that all iterations of Plaintiff's complaint have strongly

suggested the existence of animosity between Plaintiff and Defendant MacLean unrelated to Plaintiff's race—makes it appropriate to require some specificity in Plaintiff's comparator allegations.[2]

Plaintiff has indeed altered his comparator allegations with the latest amendment. He now effectively alleges that the supervisor or decision-maker with respect to all noted comparators was Defendant MacLean, so that commonality is satisfied. But the allegations are still confusing and muddled. In some respects, Plaintiff has actually *removed* details about the comparators from the previous version of the complaint; specifically, he no longer includes the descriptions of the infractions committed by the white K-9 officers Hill and Mancini (taking a city vehicle to Texas and losing a dog, according to the *second* amended complaint). Plaintiff now merely alleges that these officers committed work rule violations while he had a spotless record with no work rule violations, which relies on his view that he did nothing wrong in the dog donation situation. He adds the story of someone in the "Detective's Unit," Det. Michael Popovitch, who was also suspended but not reassigned after he engaged in a sex act in a police car while on duty. This addition is unhelpful because "detective" is a different position and presumably a different rank altogether. *See Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011) (finding letter carriers and a postmaster not similarly situated to a temporary acting supervisor). Plaintiff also notes that since his removal from the K-9 Unit, two open positions for which he was qualified have been filled by allegedly unqualified, non-Hispanic officers, Howells and Fegley. He also alleges his position on the unit was filled by a white officer, Roca; elsewhere in the complaint he says the officer

---

[2] Plaintiff also suggests that more limited allegations might be sufficient under a "class of one" theory. That concept comes from equal protection jurisprudence and is irrelevant to the comparator analysis here.

who replaced him, presumably Roca, "did not have the same credentials."[3] Finally, Plaintiff continues to mix the medical accommodation issues of Count II into Count I by identifying several white employees who received medical accommodations and, without supporting factual allegations, states that "MacLean's delay and/or refusal to accommodate Plaintiff was more severe or harsh than for" these other white officers. Even were the Court to assume that not receiving immediate medical accommodation counts as an adverse employment action for a race discrimination claim, these other employees are not useful comparators without further allegations regarding the circumstances of their accommodations.

The only conceivably worthwhile comparators, therefore, are Hill, Mancini, Howells, Fegley, and possibly Roca. Even if Plaintiff's allegation that his own record is spotless means these comparators necessarily had equal or worse disciplinary records, it is still basically impossible to compare the infractions/disciplinary records and punishments. According to Plaintiff, he did not commit any infraction, which makes the analysis unusual. Comparator analysis normally focuses on an infraction by the plaintiff that led to an adverse employment action and compares that to the infractions and punishments of other employees, because the purpose of comparator evidence is to suggest a link between the plaintiff's race (or other protected group status) and the severity of the consequences imposed as a result of the infraction. *See Thomas v. City of Phila.*, 13-4282, 2014 WL 3411142 (3d Cir. July 15, 2014) (finding nothing to support an inference that race was a factor where plaintiff was forced into retirement, because one alleged comparator was terminated rather than permitted to retire and another was away

---

[3] Plaintiff also states: "K-9 Unit members since plaintiff's removal are: Mathew Geake (white male)." This statement alleges nothing about whether Geake was assigned to the K-9 Unit instead of bringing Plaintiff back or about Geake's relative qualifications, disciplinary record, etc., and thus provides no comparison.

4

from his workplace once at the end of the day rather than three times in the middle of the day); *Carter v. Midway Slots & Simulcast*, 511 F. App'x 125, 128 (3d Cir. 2013) (noting dissimilarity of alleged comparators where they violated the attendance policy and plaintiff was terminated for sleeping on the job), *cert. denied*, 134 S. Ct. 138 (2013); *Williams v. Potter*, CIV. A. 07-02, 2008 WL 282349 (W.D. Pa. Jan. 31, 2008) ("Where an alleged comparator does not engage in the same misconduct for which the plaintiff suffered an adverse employment action, he is not a similarly situated employee for purposes of proving an inference of discrimination.")

Only if the infractions committed are similar[4] can comparison with other employees constitute "circumstances that raise an inference of discriminatory action." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). If a plaintiff suffers an adverse action unrelated to any infraction, comparing him to others who have committed infractions really cannot imply anything about the reasons for the adverse action against the plaintiff. That is, if Plaintiff was reassigned out of nowhere, the fact that some white employees were reassigned after committing specific infractions does not tell us anything about why Plaintiff was reassigned under wholly different circumstances and cannot support an inference that discrimination was behind Plaintiff's reassignment. If we instead treat Plaintiff's handling of the dog donation as an infraction, first, Plaintiff's assertion of a spotless record goes out the window, and Howells, Fegley, and Roca become useless as comparators because Plaintiff does not allege any sort of wrongdoing by them. Second, with respect to Hill and Mancini, the dog donation mishandling is so completely different from their conduct as to be incomparable; further, the dog donation

---

[4] Or perhaps if the violations are clearly more serious. *See Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009) (quoting *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006)).

story inherently counters any inference of discriminatory motivation because it plainly suggests Plaintiff's reassignment resulted from personal animosity with MacLean.

Just as it is difficult to compare Plaintiff's ambiguous non-infraction wrongdoing, it is difficult to compare the consequences he and his alleged comparators suffered. Plaintiff claims in fairly conclusory fashion that reassignment out of the K-9 unit is worse than the suspension without pay[5] imposed on the alleged comparators because he lost prestige and the opportunity to continue working in the unit. Not continuing in the unit, of course, is simply the definition of reassignment, not a secondary consequence. Moreover, suspension without pay is clearly a disciplinary action in a way that is not obviously true of reassignment, which can certainly happen for non-disciplinary reasons.

As Defendants argue, reassignment may not even qualify as adverse action for the purposes of Plaintiff's prima facie case.[6] A number of cases do recognize that "reassignment with significantly different responsibilities" may constitute adverse action, though this statement always derives from *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998), which goes on to suggest that "different" means "diminished" or otherwise lesser responsibilities.[7] *Burlington Industries* also cites *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994), which held insufficient a reassignment

---

[5] *See* Third Amended Complaint at ¶52: "He like all others aforementioned was given some days off without pay . . . ."

[6] Strangely, Plaintiff's brief relegates the adverse action issue to his discussion of Count II, part of the inexplicably off-the-mark nature of his briefing on that claim, discussed further below.

[7] Plaintiff's citation to *Frazier v. City of Philadelphia*, 12-1543 (E.D. Pa. Aug. 23, 2012), is inappropriate. This is not merely an *unpublished* opinion, it is a *nonexistent* one. Plaintiff claims the plaintiff in *Frazier* argued to the Court that the loss of prestige in reassignment of a police officer from plain clothes to uniform was adverse action. That may have been the argument, but because Judge DuBois denied the motion to dismiss by an order with no opinion or explanation—and, further, noted in that order that all grounds raised in the motion could be reasserted on summary judgment—there is obviously no record indication of the Court's thinking as to the adverse action argument. In any event, the reassignment apparently involved in that case was more clearly adverse.

that did not decrease salary, title, or benefits and was merely a change of duties to something more stressful and less convenient.

Here, Plaintiff asserts that his reassignment out of the K-9 unit carried a loss of prestige and future job opportunities outside the department. Plaintiff's experience and qualifications as a K-9 officer would seem to be intact, however, so the impact on future job opportunities cannot constitute a significant consequence. While the Court must at this stage accept Plaintiff's allegation that there is some loss of prestige, there may also have been a loss of prestige in *Harlston*, where the plaintiff moved from secretarial work to watching the door and listening for the fax machine, and the Court does not accept that Plaintiff's transfer here worked a "materially significant disadvantage." *Id.* Even if Plaintiff's reassignment constitutes adverse action, it cannot support an inference of discrimination when the comparison is other officers' suspension without pay. It is implausible that reassignment is the worse of these two consequences, that suspension does not also carry a loss of prestige, and that the difference between these two consequences can imply discrimination. While it may be conceivable that racial discrimination lies somewhere behind MacLean's treatment of Plaintiff, the repeatedly amended complaint before the Court continues to grasp for a comparison that simply does not fit and thus fails to allege facts that make an inference of discrimination plausible. Any further opportunity to amend is unwarranted, and the Court will dismiss Count I with prejudice.

Count II – RA Violation

The Court's prior opinion held that Plaintiff's RA discrimination claim failed because there was no allegation of any adverse employment action *subsequent* to the emergence of Plaintiff's medical issues. In one of several misconceptions, Plaintiff's brief suggests the Court found that the claim was sufficient but contained extra facts; in reality, the Court dismissed the claim (without prejudice), a clear indication that it was *in*sufficient. Plaintiff also mistakenly states that the Court pointed him to the need for an adverse action; this is true to a point, but the prior opinion clearly explained that the problem was the timing rather than the existence of adverse action. The opinion discounted any possibility of an RA discrimination claim based on adverse action but allowed Plaintiff to amend and more clearly bring a claim for the delay in accommodating his medical needs. Plaintiff did largely amend his claim in accordance with that instruction, though his brief seems to ignore that shift completely.

With the complaint now focused on delay in accommodation, Defendants have offered citations and argued that the delay alleged—approximately two months—is too brief to support a cause of action and is justified as the time necessary to assess the options and arrange an accommodation. In response, Plaintiff inexplicably revisits the issue of adverse action and argues that his reassignment qualifies.[8] Again, an RA claim of that nature must fail because the reassignment preceded the migraines; one cannot discriminate against another on the basis of something that has not yet happened. Plaintiff's brief is written as though without any knowledge of the Court's prior opinion,

---

[8] Delay in accommodation may itself sometimes be framed as an adverse action, *see Delgado v. Triborough Bridge & Tunnel Auth.*, 485 F. Supp. 2d 453, 460 (S.D.N.Y. 2007), but that is obviously not the point of Plaintiff's argument or the source of his apparent confusion; he focuses on his reassignment. Further, this delay would be insufficient to justify a claim.

Defendant's latest motion papers, or even his own third amended complaint. Plaintiff makes no mention whatsoever of Defendants' argument regarding the short length of the delay.

The Court recognizes that Defendants' citations have weaknesses. The decisions cited are generally based on specific justifications for delay, often uncovered through factual assessment at the summary judgment stage. *See, e.g.*, *Delgado*, 485 F. Supp. 2d at 460 (dismissing an ADA claim in part because the larger computer monitor plaintiff required for vision issues was delayed two-months as a result of being back-ordered); *Hartsfield v. Miami-Dade Cnty.*, 90 F. Supp. 2d 1363, 1372-73 (S.D. Fla. 2000) (granting summary judgment in favor of employer in part because another plaintiff with vision trouble was provided interim accommodations such as breaks, leave time, and a magnifier, and the employer acted promptly after discovering paperwork had been lost), *aff'd*, 248 F.3d 1179 (11th Cir. 2001); *Ungerleider v. Fleet Mortgage Grp. of Fleet Bank*, 329 F. Supp. 2d 343, 354 (D. Conn. 2004) (granting summary judgment for employer where plaintiff received interim accommodation of working in her home office while awaiting a PC for her desk at work). Nevertheless, as these cases recognize, the law "requires only a *reasonable* accommodation," and an accommodation need not be instantaneous to be reasonable. *Hartsfield*, 90 F. Supp. 2d at 1372 (emphasis added). Given the utter lack of response from Plaintiff on this issue, the Court is comfortable concluding that the limited delay involved in this case is insufficient to state a claim. As with Count I, Plaintiff has had ample opportunity to amend this claim, and the Court's dismissal will now be with prejudice.